Good morning judges. My name is Chad Gardner. I represent Mr. Tyreese Thompson. This case is predicated on the fact of whether 922g is a standalone offense. Mr. Thompson was charged under 924a and 924e. In this case, Mr. Thompson was not charged under 924a. He was charged under 922g and 924e. And as the court's well aware, 924e changes the statutory minimum. Counsel, this is Judge Loken. It seems to me this argument is foreclosed by the fact that 924a1 does not list e as an exception, which means that if 924a is listed in the indictment or not. Why isn't that the textual answer to your argument? Well, I would respectfully disagree with that. 924a is a necessary element that must be charged. In this case, the grand jury substituted 924e. Wait, what case holds that it must be in the indictment, 924a? I'm not aware of any case. What I am referring back to is a crime. The knowing element is an element of 924a. And the fact that it's absent here provides... We're not talking about the same point. 924 is the penalties provision. Correct. You're saying and the overriding or the penalty provision by default is 924a. I am not saying that. No, I'm saying that. I'm saying that's the way I read it. And the penalty provision doesn't have to be charged in the indictment. That's right. Except you're saying it does. You're saying the indictment has to name 924a. And if there's no case holding that, and if 924a says it applies, that 924e is not an exception to 924a, then a conviction, a 922g1 conviction necessarily includes or contemplates or allows sentencing under 924a and maybe also 924e. So your either or argument is to me squelched, if you will, by the first sentence in 924a1. If 924a is subpluses to... If 922g necessarily implicates 924a in all instances, then the Supreme Court in Rehafe, why are they reading in the knowingly as an essential element of the crime? My view of the statutory of the Supreme Court... But the elements of the... 922 is the offense. 924 is the penalties. The elements of the offense in 922g include a mens rea element. That has nothing to do with the penalty provisions. But the statutory... Normally in a criminal statute, the elements are all in one element. The penalty range is separate. This particular statutory construction that is different than 924 separates that. And so if 924e... If it's modifying 924a, then the statute... 924e should read whoever violates 924a and then in addition has three or more serious felon... Three or more serious convictions, then that would seem appropriate. But that's not the way the statute's written. And the statute's written... 924e, it doesn't appear to modify 924a. It appears to modify 922g in this case because 924a is not charged or presented in this case. And 924e in a lot of cases is looked at as a sentence enhancement. And that's how it's traditionally treated in these cases. But in Mr. Thompson's case, he was indicted and subject to the 15-year statutory minimum. So that's evidence that the government believes this is a unique charge with unique elements. Well, not if it's surplusage. But you can include surplusage in an indictment. Government explains it gives notice of our sentencing intention at the earliest possible time. That's a pretty humane argument. A case law says it's surplusage. You don't have to put in the indictment which penalty provision is going to apply if you succeed... If we, the government, succeed in proving the offense. I don't understand... If you can't give me a Supreme Court case saying that the government must charge a penalty provision when it prosecutes under 922, then I think your argument is... I don't think it succeeds. And I will base this... This is not based on Supreme Court precedent that's out there right now. I believe there is another case out of the 11th Circuit of bringing the same issue. But this is an issue that's generated from the Supreme Court's instruction in rehafe and dividing the statutes. I'm not going to offer to the court that there is a Supreme Court decision upholding this. I am pointing out that based on... Well, we can... I'll have to look at rehafe again from this perspective. I didn't think rehafe went there. Well, I appreciate it. The second point we bring up on this appeal is the denial of Mr. Thompson's motion to suppress the search of a third-party residence. As it was briefed and litigated in the suppression hearing in this case, the officers entered a third-party resident on an arrest warrant for Mr. Thompson. The evidence in that is that Mr. Thompson actually exited the house and so did the other resident prior to the officer's entry. Counsel, let me ask you a question about that if I could. Sure. Would you agree that if the police thought there may have been other people in the house at the time of Mr. Thompson's arrest, that they are generally permitted to conduct a protective sweep, aren't they? I think they're generally allowed to do that if they believe those persons present a danger. I think we're jumping way past what would be an acceptable expansion of a Fourth Amendment exclusion if we say merely if there's persons inside that house, then we can search it. You have more than that here, don't you? You've got a delay in opening the front door. You've got some, as I recall, curtains are still moving around. You've got a confusing answer about whether someone else is in there. I mean, it's more than just, Counsel, wouldn't you agree, just a suspicion that someone else is in the house? I would agree that there are other factors. I mean, there was the issue of the dog and the other person in the entry. But it also goes back to what's the officer's intent and purpose. And the reason for being there was to arrest Mr. Thompson. He's under arrest. Their investigations concluded. But because in the manner that they approached this situation, they were going to search the house regardless because they're using a tactical team. And there wasn't evidence prior to this that Mr. Thompson was armed. This was merely a warrant for his arrest. And they had an uncorroborated tip that he was at a third party resident. I thought the Supreme Court has tried to teach us that subjective intent of the officers is irrelevant unless you can infer from it the lack of objective reasonableness. Well, in this case, I think you can say it's and conducted the search from the very beginning. There was no intent to knock on the door, announce their arrival, and say they had a warrant. What their operation was to do is, we're going to sit up on this house. We're going to call a tactical team in. And the tactical team's response is always to enter the house and search. And they approached this situation assuming and presuming they're armed. And I think that those tactics, they implicate the Fourth Amendment because as we're going forth with these exceptions, officers are trained on these exclusions. And these exclusions are based on good faith. And I think it goes to whether they have good faith if they're going to set up to push something to an exception so they can utilize an exception to the Fourth Amendment rule when there are other good faith options available. And it becomes procedurally the officers are conducting these operations. The other element that Mr. Thompson brings up, the other count, is the application of a four-level enhancement for drugs and being in possession with the firearm. As stated in his brief, Mr. Thompson, the gun was found at one location and the drugs were found at another location, spread out through a car. They were separated by distance. Whether someone possessed drugs at one time and at one location is, and then that location is necessarily separated from the other location, inferring that that gun possession is sufficient for an enhancement is inappropriate this time. If there's no further questions, I would like to reserve the last four minutes for my rebuttal. Very good, thank you. Mr. Wagner. May it please the Court, David Wagner for the United States. I'd like to start by talking about this armed career criminal aspect of the indictment and proof at trial. And I'd like to begin by clarifying what's actually at issue before the Court because although the discussion just now was about what the indictment said and whether the indictment was sufficient, Mr. Thompson's brief does not dispute the sufficiency of the indictment for charging, for not charging 924A2. In fact, if you look at page 11 of his brief, he explicitly says Mr. Thompson disputes that the indictment was defective and asserts only that additional elements necessary to prove his guilt were never presented at trial. So this is not a challenge to the indictment. Rather, this is a challenge to assuming the indictment is sufficient, which he doesn't dispute, what did the government need to prove at trial? And the first point in his brief is that the government needed to prove to the jury at trial that Mr. Thompson had three predicate convictions required to qualify him as an armed career criminal. As you've reframed the argument, then it's just Elmendaz Torres precludes it, right? That is absolutely correct, Your Honor. But counsel thinks he has a little, he has a little more subtle, there's a little more subtlety to his argument than that. He's taking off from rehave. Yes, I understand. I believe the rehave argument is separate though because that goes to a separate element of the offense. The first point is, the first point raised as I read Mr. Thompson's brief, the first point raises two distinct issues. The first is, Judge, does the government need to prove the predicate offenses required to qualify someone as an armed career criminal? The answer is emphatically no. And we've cited cases from this court that hold that beyond any peradventure. The one thing I would like to note, just because I don't want to mislead the court in any way, is that the government's brief cited a case called United States v. Strong on page 30. That was a case where the opinion indicated that the indictment cited 924E, as Mr. Thompson said, actually in preparing for argument went back and pulled the actual indictment from that case, and it did not cite 924E. So I apologize for not doing that earlier. I just wanted to clarify that for the court. However, we also cite United States v. Daniels. I pulled the indictment from that case. It did cite 924E, and this court held, as it should here, that the government was not required to prove the predicate convictions at trial. Assuming Mr. Thompson is challenging the indictment for not charging 924A2 or citing to that part of the statute, I completely agree with your analysis, Judge Logan. There's no case holding that the government needs to cite that penalty provision in indictment. And in fact, I would direct the court to the recent decision in United States v. Caudill. We cited that case, and the government cited that case in our 28J letter to this court last week. In that case, the indictment only cited 922G1. That's the prohibited conduct part of the statute, and this court found, following Rae Hayes, that that was sufficient. There's no reason to take any other position here. I'd also point out that this notion that the jury should find predicate offenses would be absurd in practice. Note that Mr. Thompson never asked that the jury be instructed to find his three predicate offenses. There's no dispute in this case that he has the three predicate offenses. So even if there were any conceivable error, it would be harmless. And practically speaking, as the Supreme Court recognized in Almandar's Torahs, as that decision correctly recognizes, it would be impossible for juries to find whether a defendant has predicate offenses for violent felonies or serious drug offenses. These are questions that ask a jury to try to figure those sorts of legal questions out would just not be workable. So I believe that addresses the first half of the first point of Mr. Thompson's brief. I'd like to move on and address the second half of point one of his brief, which is the Rae Hayes question. This is an actual element of the crime, the knowledge element of the crime. The requirement that Mr. Thompson know at the time he possessed the gun that he had been convicted of a crime that was punishable by imprisonment for a term greater than one year. It wasn't clear to me how this issue was being presented, whether it was being presented as a challenge to the sufficiency of the evidence, to the sufficiency of the indictment or to the jury instructions on appeal. But at bottom, it doesn't matter because it was not preserved below. So regardless of how it's presented to this court, it's reviewed for plain error. And there's no conceivable plain error in this case because there's no reasonable probability that Mr. Thompson's trial would have ended any differently if the indictment had charged him with knowledge, if the jury had been instructed to find his knowledge or and the evidence was sufficient to show knowledge. This court held in Owens recently that if a defendant enters into an old chief stipulation stipulating that he's been convicted of a crime, that is legally sufficient evidence. We have not held that counsel. We've said multiple cases. We don't need to. We are putting that aside. Judge Loken, one that I've authored in the last month, citing a prior case. I didn't go and read the ones you cited, but we have repeatedly said we don't have to decide that. It's a legitimate question, but it's open. Well, I would encourage you to read United States versus Owens because I do believe that it squarely holds that. In any event, this court doesn't have to go here in this case because the evidence at trial. We had a case before July 15, 2020 that said we aren't reaching that question. That's true. There are some decisions from this court that have said it's not necessary to reach that question in Owens. I believe the court did reach that question and again in Gilmore. So I would point the court to those cases. But in any event, the court doesn't have to deal with that issue in this case either because the evidence at trial showed unequivocally that Mr. Thompson knew he was a felon. In this case, you don't even have to look beyond the trial record to see that he knew he was a felon. The trial record shows that after he was involved in the shootout in November of 2014, he falsely denied having a gun, even though the gun was found in his apartments with his DNA on it immediately after the shooting. During his initial interview in the trial, the jury heard that during Thompson's interview on March 15, he admitted helping Richards hide guns in the attic, but he incredibly complained that he possessed only one of those guns. So even if this court doesn't want to grapple with the issue of whether the old chief stipulation is sufficient in this case, it doesn't matter. You're persuading me that we should take this case in bank and get it resolved. I am not at all suggesting that. You shouldn't want us to go there. You've got me ready to go there. But Judge Slocum, respectfully, there's a distinction between deciding that the court doesn't need to decide an issue in a case and then deciding in another case. There's no conflict between those two cases. In this case, this would not be the appropriate case to take on bank because there is so much evidence at the trial showing that Thompson had a felon. It simply doesn't matter if this court decides the old chief stipulation is sufficient or not. So if there were an opportunity to take that issue on bank, I would just suggest that this is not the case to do that. It shouldn't bear on the outcome of this case. Unless the court has questions about the Ray Haif issue, I would like to turn to the suppression issue in my remaining time and first address the question of... Let me tell you a question I wanted to ask. It may not be at the start of yours, but the question is, if the sweep is invalid, does the post-hope consent search save the seizure? I think what you're asking is, is there an argument of inevitable after-the-fact consent truly an alternative ground, or don't you have to win on the sweep point? We certainly have not argued that it's an alternative ground, and the reason is that the record doesn't... You've argued it like an alternative ground. It's presented like an alternative ground. Well, the reason we haven't argued it directly as an alternative ground is because we don't have proof from the record as it stands that the officers would have gone back in to search the house with consent if they hadn't first found the guns during the sweep. And I think that is the element that prevented us, or at least in my view, prevented... Made it more difficult to make an inevitable discovery type argument. Mr. Wagner, this is Judge Gross. I asked Mr. Gardner about this, and let me ask you about the flip side of the coin. Given that Thompson was already in custody, he was outside of the house, what basis is there for us to determine that this was a protective sweep rather than a search for evidence? If you're asking about this, are you asking about the subjective intent, Judge Gross? Well, what objective basis is there to believe that they need to go search an attic when he's already in custody outside of the house? Well, there are numerous factors, and I believe you alluded to them, that raise the officer's suspicion and fear that someone could be in the house, and their testimony was certainly... Let me add one other factor, though, in that it's my understanding that the sweep took 10 minutes, and wouldn't it be quicker just to remove him from the property? Well, I wouldn't agree that the sweep took 10 minutes. I think the testimony was that it took something less than 10 minutes, and there was nothing to suggest that it was longer than necessary. As far as removing Thompson from the property, none of this court's opinions have held that officers have to immediately rush away from the property, and in fact, in the case, in the Alatorre case, which is discussed at length in the briefs, this court noted that the officers could do the search because they were dealing both with the defendant in that outside the house, and that's very similar to this case, because the officers were processing Thompson after his arrest, and they were also dealing with Richards and talking to Richards, and there's no need for officers in that sort of situation with all the facts that they had, heightening their suspicion of what could have been going on in that house if they had been banging on the door and listening to sounds for six to eight minutes, to have to fear for their safety before they leave the premises or to rush away from the premises. Counsel, does it matter whether an attack could be lodged from the attic? An attack certainly could be lodged from the attic. Someone could come down from the attic and lodge an attack, and also, and I can provide this to the court, but there was pictures of the house introduced at trial, and the attic has a vent that faces into the front yard, so I believe someone with a firearm in the attic could easily assault the officers as they were doing their, carrying out their Now, I'd be happy to provide that exhibit to the court after the argument, but even aside from what the officers encountered at the house, remember, they were going to arrest Thompson for the crime of robbery. That is a violent crime, a dangerous crime, and they could reasonably expect that there could be some danger to their safety. They also knew that he was suspected in a burglary involving the burgling of multiple firearms, so they had reason to believe there could be firearms in the case, so the precautions that they took were entirely reasonable as they approached the house, and just going back to your question, something occurred to be judged for us as they were leaving the house. One other reason that officers should not be required to flee away from this situation before taking precautions to make sure there was no threat in the house is because once they start leaving, they turn their backs to that house, and they shouldn't be forced to turn their backs to the house and leave with the fear that someone in there with a firearm could be intending to do them harm. Counsel, let me ask you one last question about your expectation of privacy standing argument. Wouldn't that require us to find that the district court committed a clear error when they found that Mr. Thompson was an overnight guest in the room from which they gained access to the attic? I don't know that it's a clear error question, Your Honor, so much as what evidence the court should have considered, so I think it's almost more of an abuse of discretion in that sense, whether the court should have relied on hearsay. Once the hearsay is credited, if it's credited, I would not dispute that it was not clearly erroneous for the court to find a reasonable expectation of privacy. It's that first step. It's crediting that unreliable hearsay evidence that the government maintains was a mistake that the district court made, and that was the only evidence that Thompson relied on to show his reasonable expectation of privacy in the house. Thank you. Unless the court has questions about the sentence enhancement issue, I would plan to rest on the briefs. I don't think the court needs to even reach that issue because Mr. Thompson was sentenced as an armed career criminal. Unless the court has any further questions, I see my time has expired. Thank you. Thank you. We have four minutes for rebuttal, Mr. Gardner. Mr. Gardner, your mic is muted. There we go. Sorry about that. Thank you, judges. May it please the court, in focusing back on the protective sweep and the evaluation of that, keep in mind that the testimony in the record indicates clearly that the officers were attuned to the fact that Mr. Thompson was possibly a suspect in a burglary. That means that they believe that there might be evidence of another crime in that. And that put them on notice that there might be a reason to search this house other than just to take Mr. Thompson to the custody. And the fact that this is a third-party residence and there was testimony at trial. But wasn't the burglary, didn't the burglary involve firearms? So isn't there a heightened concern that would justify a protective sweep? I don't know that it's a heightened concern. If they believe a burglary that occurred six months prior, there would be evidence of that in this crime. And that was reasonable. That's something you bring to a judge to get a warrant, especially in a third-party residence. The person who owned the house, the renter himself, was a felon at the same time. And there was no effort at all to corroborate in this case. And the fact that they were able to do that was reasonable because the evidence merely went out on the suspicion. They're saying that the detectives and the SNHU TAC team that was arresting Mr. Thompson spoke nothing of a robbery warrant, even though that's actually the warrant that was out there for Mr. Thompson's arrest. What they were focusing on was this pawn shop burglary. And that was always in their mind from the very beginning. And I think that goes back to the good faith. If the officers believe there's evidence and they think it's reasonable, why not bring that to a judge rather than utilize a TAC team in an instance where we're going to go enter into a house? The court also, in addressing co-counsel and opposing counsel, was talking about whether Mr. Thompson had an expectation of privacy. The fact was the tip that the officers were acting on was that Mr. Thompson was an overnight guest. It's undisputed because the tip got called in that he's spending the night there. And in all the hearsay evidence about Mr. Richards or the hearsay evidence is if the officers are basing their action on the tip, that goes to show that Mr. Thompson did have a reasonable expectation of privacy in the area that he was at. A protective sweep is a protective sweep. And obviously, the officers are going to enter in every place, but the testimony is they had to bring a ladder out. They had to climb up into the attic. And that underlines this was not a protective sweep. This was a search. They were searching for extra evidence of a burglary. They weren't searching for evidence of people. The attic access that they're speaking of, the officers never pointed to a threat that they heard or saw evidence that someone was in the attic. What they pointed to was there was a delay. And the other testimony is there was a dog, a large dog, and that actually that dog played a specific role in that the officers, when they opened the door, saw the dog and asked the resident to move the dog to a cage and then directed the parties out. The parties were following their directions. And once again, Counsel, what about the cobwebs on Mr. Thompson and the scuff marks on the walls in the closet? Your Honor, that testimony was brought forth. There are no photographs. And the officers could reasonably believe that, but those cobwebs could easily be from someone hiding under a bed. It doesn't indicate that those cobwebs came from an attic. And the fact that the officers are searching in a manner which, I guess in Mr. Thompson's opinion, if they're doing a protective sweep and they're going through all of these machinations and climbing ladders and getting into the nooks and crannies, they're not looking for a person. They're looking for a search. And I see that my time is up. And I thank you guys for the opportunity to represent Mr. Thompson in front of you.